UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RANDY MARVIN SWISHER,<br><br>    Plaintiff,<br><br>    v.<br><br>CASS COUNTY SHERIFF'S DEPARTMENT, DALE CAMPBELL, JOE NIES, JOHN O'CONNER,<br><br>    Defendants. | Case No. 3:22-CV-380 JD |

## OPINION AND ORDER

Plaintiff Randy Swisher was renting a bedroom in his son's house when Cass County Sheriff's Department officers executed a search warrant at the house. The search warrant was issued after an eBay account dealing in stolen goods was thought to be owned by Mr. Swisher's son. When the search began, Mr. Swisher told the officers that his bedroom could not be searched without a separate search warrant because it was a separate dwelling unit. The officers ignored his objections, searched the bedroom, and found a travel bag that contained a handgun and Mr. Swisher's check book. The officers checked Mr. Swisher's criminal record and found out that he was a person prohibited from possessing firearms. As a result, they arrested him and seized the bag and the gun. He was then charged in Cass County with unlawful possession of a firearm, and his criminal case is still ongoing.

Mr. Swisher sued Defendants Cass County Sheriff's Department, Dale Campbell, Joe Nies, and John O'Conner, claiming that the search of the bedroom, the seizure of the bag and handgun, and his arrest violated his Fourth, Fifth, and Fourteenth Amendment rights. Defendants have moved for summary judgment on all of Mr. Swisher's claims, but Mr. Swisher has not

responded to the motion.[1] Having reviewed the motion and accompanying evidence, the Court finds that because of the overlap of the constitutional claims in the two cases this case should be stayed under *Younger v. Harris*, 401 U.S. 37 (1971), until Mr. Swisher's Cass County criminal case is concluded.

### A. Factual Background

In May 2020, The Purdue Police Department and the Winnebago County (Wisconsin) Sheriff's Office were conducting theft investigations. (State Ct. Suppression Hearing Tr., Defs.' Ex. D, 25:5–26:6; Search Warrant Aff., Defs.'s Ex. E.) Detective Kyle Schroeder of the Winnebago County Sheriff's Office was notified on May 13, 2020, that stolen items were being sold on eBay. (Search Warrant Aff., Defs.' Ex. E, ¶¶ 5 & 6.) eBay linked Joshua Swisher—Plaintiff Randy Swisher's son—as the person selling the stolen goods from a house at 12248 S. County Road 700 East, Galveston, IN, 46932. (*Id*. ¶ 6.)

On May 14, 2020, Defendant Detective Joseph Nies testified before Cass County Judge Kitts to obtain a search warrant at 11248 South County Road 700 East, Galveston, IN 46932. (Search Warrant Hearing Tr., Defs.' Ex. D, 26:15–26:19.) Following the hearing, Judge Kitts issued the warrant. (State Ct. Suppression Hearing Tr., Defs.' Ex. D, 26:20–21; Search Warrant, Defs. Ex. G.)

The search warrant described the property to be searched as "12248 S COUNTY ROAD 700 E in the City of Galveston, Cass County, IN, more particularly described as a 2-story red brick residence with white trim. It is located on the west side of CR700E just south of CR1225S.

---

[1] Along with their motion for summary judgment, Defendants issued a notice to Mr. Swisher explaining his obligations to respond to the motion and the consequences for failing to do so. (Notice of Summary Judgment M., DE 30.)

There is a detached garage located behind the main residence. House sets back a lane about 100 yards from CR700E". (Search Warrant, Defs. Ex. G at 1.)

The Search Warrant was executed on May 14, 2020. Detective Nies assisted with the execution of the search warrant. At the start of the search, Mr. Swisher told the officers that his bedroom was a separate apartment that he was renting from his son, Joshua, and that it could not be searched. (State Ct. Suppression Hearing Tr., Defs.' Ex. D at 27:10–12.) The officers on site contacted the prosecutor who told them that they could search the bedroom despite Mr. Swisher's protests. (State Ct. Suppression Hearing Tr., Defs.' Ex. D at 8:20–9:3.) During the search of the room, a gun was found in a camouflage bag. (*Id*. at 32:2–5.) Inside the bag was also Mr. Swisher's check book. (*Id*. at 30:11–17.) The officers ran Mr. Swisher's name through a criminal records database discovering that he was a person prohibited from possessing firearms due to being a serious violent felon. *Cf.* Ind. Code § 35-47-4-5(c) ("A serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Level 4 felony."). Mr. Swisher was arrested and charged the next day under Indiana Code § 35-47-4-5(c). (Indictment, Defs. Ex. A.) He appeared before Judge James Muehlhausen who found probable cause for the arrest and set his bond at $5,000 cash/$25,000 surety. (State Ct. Minute Entry, Defs.' Ex. M.)

As the case proceeded in state court, Mr. Swisher moved to suppress evidence from the search of his bedroom. The court held a suppression hearing with multiple witnesses testifying. Detective Nies testified to finding Mr. Swisher's driver's license during the search. (State Ct. Suppression Hearing Tr., Defs.' Ex. D at 28:18–29:6.) The driver's license does not list an apartment number for his 12248 S. County Road 700 E address. (Swisher's Driver's License, Defs. Ex. H.) Detective Nies testified that he was not aware of anyone producing a lease for the

3

bedroom on the day of the search and no such lease was found during the search. (State Ct. Suppression Hearing Tr., Defs.' Ex. D at 30:21–31:4.)

Defendant Detective Dale Campbell was a Detective Sergeant with the Cass County Sheriff's Office at the time of the search and helped execute the search warrant at Joshua's home. (*Id.* at 5:22–6:6.) Detective Campbell heard that Mr. Swisher objected to the search of his bedroom and claimed it was a separate residence or apartment. (*Id.* at 7:23–8:8.) No lease for the bedroom was provided to Detective Campbell. (*Id.* at 8:11–12.)

Joshua testified that he was the owner of the house. (State Ct. Suppression Hearing Tr., Defs.' Ex. D at 37:6–20.) He said that Mr. Swisher had lived there for three years. (*Id.* at 37:21–38:1.) According to Joshua, he had a lease with Mr. Swisher which he produced at the hearing. (Lease, Defs.'Ex. I.) The lease is dated July 24, 2016, and is between Joshua and Mr. Swisher. (*Id.* at 1.) The lease states that Mr. Swisher will rent

> the room, municipally described as 12248 s county rd 700 e, galveston, Indiana [sic] (the "Property"), for use as residential premises. The Property is more particularly described as follows: Renter may have temporary access to the bathroom and kitchen facilities downstairs until the completion of those facilities upstairs. Renter may also use outside property for various tasks with owner's approval per occurrence.

(*Id.* at 1.) The lease does not describe any bedroom or apartment within the building that is being rented.

Joshua testified that, at the time of the search, ten individuals lived in the home: Joshua, his wife, and his six children; his brother; and Mr. Swisher. (State Ct. Suppression Hearing Tr., Defs.' Ex. D, 40:4–17.) Mr. Swisher stayed in an upstairs bedroom. (*Id.* at 39:15–17.) Mr. Swisher had possession of the room, but Joshua had a key to the room. (*Id.* at 40:18–41:7.) When asked about exclusive control, Joshua testified: "Yes. He did everything with that other than the fact that I had a spare key. But, like I said, I never went in without calling, contacting him or him

4

being with me." (*Id*. at 42:10–12.) When asked if he ever kept items in Mr. Swisher's room, Joshua answered: "Yes. He's got, he's got a few things that are mine such as a TV stand, dresser, most of that survival gear is his, but like I said, we bought stuff, and maybe a couple tools." (*Id*. at 51:15–17.) Joshua claimed that the handgun found in Mr. Swisher's bedroom was his. (*Id*. at 48:1–10.) He said he last used the gun when he went to the store and he had it in a camouflaged bag. (*Id*. at 48:11–49:2.)

Mr. Swisher also testified at the suppression hearing. He said his address is "12248 South County Road 700 East, Galveston, Indiana," and does not contain an apartment or room number. (*Id*. at 57:8–16.) Mr. Swisher testified to his bedroom being on the second floor of the residence. (*Id*. at 58:6–9.) He claimed that Joshua put the camouflage bag into his room and that he and Joshua shared the bag. (*Id*. at 71:11–17.)

The facts submitted to the Court do not mention any involvement in the case by Defendant John O'Conner, and there's nothing said about the role of the Cass County Sheriff's Department.

On May 17, 2021, Judge Lisa Swaim denied Mr. Swisher's Motion to Suppress finding that "[t]he search warrant was properly granted for the entire residence, regardless as to whom each room was tied to inside." (Order, Defs.' Ex. J ¶ 9.)

Mr. Swisher's Cass County criminal case is still ongoing. *See* https://public.courts.in.gov/mycase (Crim. Case No. 09D02-2005-F4-5) (last visited September 11, 2023.)[2]

---

[2] The court may take judicial notice of public documents. *See* Fed. R. Evid. 201; *Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018); *Daniel v. Cook Cty.*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts.").

5

B. Discussion

In his complaint, Mr. Swisher states that Defendants' search of his bedroom and seizure of his son's travel bag and the handgun, and his subsequent arrest for being a serious violent felon in possession of a firearm, violated his Fourth Amendment rights against unreasonable searches and seizures, as well as his due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. Defendants have moved for summary judgment on each claim, but before reaching the merits of the motion, given the pendency of the criminal case against Ms. Swisher in Cass County that involves the same constitutional issues as advanced here, the Court must first consider whether it should stay the case under *Younger*, 401 U.S. 37, until the Cass County case is resolved.

Under the *Younger* doctrine, "federal courts must abstain from taking jurisdiction over federal constitutional claims that may interfere with ongoing state proceedings." *Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). This is because "underlying principles of comity, equity, and federalism" are at play in such situations. *J.B. v. Woodard*, 997 F.3d 714, 724 (7th Cir. 2021). "The federal courts are 'obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction.'" *Barichello v. McDonald*, 98 F.3d 948 (7th Cir. 1996) (quoting *Mt. Healthy City Board of Ed. V. Doyle*, 429 U.S. 274 (1977). "In the absence of a showing that a state has waived abstention arguments by expressly urging the federal court to address the merits, the issue may be raised on the initiative of the court." *Id*.

"The *Younger* abstention doctrine requires federal courts to abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no

extraordinary circumstances exist which would make abstention inappropriate." *Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002). Furthermore, federal courts typically abstain from interfering with ongoing state criminal prosecutions, even in the context of a § 1983 suit for damages. *See Simpson v. Rowan*, 73 F.3d 134, 138 (7th Cir. 1995) (The policy against federal interference with pending state proceedings would thus be frustrated as much by a damages award as it would by either an injunction or a declaratory judgment. *Younger* abstention is therefore appropriate while the case works its way through the state appellate process."). Examples of extraordinary circumstances requiring non abstention are proceedings that are "motivated by a desire to harass or [are] conducted in bad faith" or where "an extraordinarily pressing need for immediate equitable relief that, if not granted, will irreparably injure the plaintiff." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 596–97 (7th Cir. 2007) (quotation marks and citations omitted). While "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States," *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 70 (2013), "[i]n *Younger*, [the Supreme Court] recognized an exception to that obligation for cases in which there is a parallel, pending state criminal proceeding," *id*. at 69–70.

Potential claims that can trigger *Younger* include those arising from illegal searches, seizures, detentions, and prosecutions. *See Gakuba*, 711 F.3d at 753. "Generally—at least in the context of the *Younger* abstention doctrine—staying the case, rather than an all-out dismissal of a claim, is the proper disposition where a plaintiff seeks compensatory damages." *Woodard*, 997 F.3d at 724; *see also Shaw v. County of Milwaukee*, No. 21-1410, 2022 WL 1001434, at *2 (7th Cir. Apr. 4, 2022) ("district court should have stayed rather than dismissed [the plaintiff's] damages claims" pursuant to *Younger*) (citing *Gakuba*, 711 F.3d at 753)); *Simpson*, 73 F.3d at 138–39 ("In *Deakins*, the Supreme Court determined that when *Younger* abstention is required,

7

'the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding.'" (quoting *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988)).

Here, abstention under *Younger* is necessary. Mr. Swisher's prosecution in Cass County is no doubt judicial in nature and it implicates important state interests of adjudicating violations of state criminal laws. Moreover, there's nothing before the Court to suggest that Mr. Swisher does not have an adequate opportunity for review of his constitutional claims. Mr. Swisher's allegations that Defendants illegally searched his living quarters over his objection and without a separate search warrant, resulting in his arrest and criminal charges, are matters that one would expect to be litigated in his Cass County criminal case and which in fact was addressed as a pretrial matter on a motion to suppress. If the Court were to decide the constitutionality of these claims, it would necessarily insert itself into this criminal case. The Court's finding here as to whether Defendants had the right to search Mr. Swisher's bedroom could affect the state court's decision as to whether the jury could consider the evidence recovered during the search. The same is true with any determination of whether Defendants had probable cause to arrest Mr. Swisher. *See, e.g.*, *United States v. Swift*, 220 F.3d 502, 506-507 (7th Cir. 2000) ("The exclusionary rule is a judicially created remedy, aimed at curbing overly zealous police action. It tells police that if they obtain evidence illegally, they will not ordinarily be allowed to use it against the suspect they are after.")

Moreover, the Court is not cognizant of extraordinary circumstances that would make abstention inappropriate such as prosecution driven by an illicit motive, or an extraordinarily pressing need for equitable relief.

Accordingly, the Court will stay the resolution of Mr. Swisher's constitutional claims until his criminal matter is concluded. *See Gakuba*, 711 F.3d at 753 ("Because monetary relief is not available to [plaintiff] in his defense of criminal charges, however, and because his claims may become time-barred by the time the state prosecution has concluded, the district court should have stayed rather than dismissed [plaintiff's] civil-rights claims."); *see also Wallace v. Kato*, 549 U.S.384, 393–94 (2007) (If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.").[3]

### C. Conclusion

For these reasons, the Court—

1. STAYS this case pending the resolution of the Cass County criminal case against Mr. Swisher (Case No. 09D02-2005-F4-5);

2. ORDERS Defendants to file a motion to lift the stay within 30 days after Mr. Swisher's case is fully litigated through every level of the state system; and

3. DIRECTS the clerk to STATISTICALLY CLOSE this case.

---

[3] The Court is aware that, shortly after filing this case, Mr. Swisher sought to stay this case pending the resolution of the criminal case but his motion was denied by the Magistrate Judge. However, Mr. Swisher's motion was based on his mistaken view that his damages would not be fully ascertainable until the conclusion of the criminal case. (MJ's Order, DE 14 at 2.) The instant stay is not based on mere convenience or purported efficiency in managing the case but on the principle that federal courts should not interfere with state court proceedings.

SO ORDERED.

ENTERED: September 14, 2023

                                                  /s/ JON E. DEGUILIO  
                                                  Judge  
                                                  United States District Court